# UNITED STATES DISTRICT COURT
for the
Northern District of Iowa

| | |
|---|---|
| United States of America<br>v.<br><br>LAWRENCE MOORE<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)           24-CR-03050<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   November 8, 2024   in the county of   Humboldt   in the
  Northern   District of   Iowa  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Felon in Poession of a Firearm |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

 

*Micah Van Otterloo*
*Complainant's signature*

S.A. Micah Van Otterloo, ATF
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means.

Date:   11/19/2024

*Kelly K.E. Mahoney*
*Judge's signature*

Northern District of Iowa      Kelly K.E. Mahoney, U.S. Chief Magistrate Judge
*Printed name and title*

# Affidavit in Support of An Application for an Arrest Warrant

I, Micah J. Van Otterloo, being first duly sworn, do hereby depose and state as follows:

## Introduction

1. I make this affidavit in support of an application for a complaint and arrest warrant for Lawrence MOORE, for a single violation of 18 U.S.C. §§ 922(g)(1): Possession of a firearm by an individual who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.

## Case Agent Background

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been employed by ATF since January of 2017. My responsibilities as an ATF Special Agent include investigating violations of federal law specifically but not limited to the areas of firearms, narcotics, explosives, and arson. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy at the Federal Law Enforcement Training Center. In basic training, I received extensive training in the areas of firearms, explosives, and arson. Since my basic training, I have completed additional specialized training through ATF in the areas of interview techniques, the National Integrated Ballistic Information Network (NIBIN), Outlaw Motorcycle Gangs, and Interstate Nexus Expert Training. During my time with ATF, I have investigated numerous drug organizations including lower-level drug dealers and larger multi-defendant drug conspiracy cases. I have investigated gun crimes and gun crimes

involving narcotics. I have investigated cases involving individuals that have utilized explosives in an illegal manner and have constructed explosive devices. I have investigated crimes involving federal violations of the National Firearms Act (NFA), including fully automatic firearms, short-barreled rifles and or shotguns, and destructive devices. Often to facilitate those investigations I have utilized confidential informants, overseeing their work, confirming their information, and ensuring their safety while cooperating with law enforcement. That during the course of my duties as a local police officer and Special Agent with ATF, I have led and participated in hundreds of investigations into the use of firearms in the furtherance of drug trafficking offenses. That many investigations involved large multi-state conspiracies to traffic illegal narcotics and the criminal possession of firearms to further the narcotics trade.

3.  That during the course of my duties, I have led and participated in narcotics trafficking investigations involved with marijuana distribution, marijuana grow operations, methamphetamine distribution, methamphetamine manufacturing, acquisition of methamphetamine precursor ingredients, cocaine distribution, crack cocaine distribution, heroin distribution, fentanyl distribution, prescription drug distribution, and other narcotics. Many of these investigations also included the possession of firearms by targets of these investigations for purposes in furtherance of drug trafficking offenses.

4.  That during the course of my duties, I have authored a Federal Title III Wire Tap Application and an Organized Crime Drug Enforcement Task Force (OCDETF)

investigation. I have participated in several other Title III Wire Taps and OCDETF investigations. I led a long-term investigation into the criminal street gang, Gangster Disciples, and their trafficking of heroin and firearms possession. I led the long-term investigation of the criminal street gang, Hells Angels, and their trafficking of methamphetamine and firearms possession. An investigation into a local Minneapolis Hmong methamphetamine trafficking organization acquiring methamphetamine from California. An investigation into the methamphetamine trafficking of a local Minneapolis Hispanic organization trafficking methamphetamine internationally. I have also led and participated in hundreds of street level narcotics investigations in which firearms were utilized at a tool to further the drug trafficking efforts of individuals. During these investigations, I have served various roles including: case agent, undercover agent, and confidential informant handler among other roles. I have purchased illegal narcotics and firearms in an undercover capacity.

**5.** I was previously employed by the Spencer Iowa Police Department from 2007-2017. In Spencer, I served as a patrol officer, narcotics investigator, general criminal investigator, and Lieutenant supervising the investigations unit among other duties. I attended many specialized training courses during that time. Some of those trainings are, drug identification, narcotics investigations, interviewing techniques, special weapons and tactics school, management of confidential informants, crime scene management, crisis response for command staff, response to improvised explosive devices, criminal street gang investigations,

methamphetamine investigations, Iowa Law Enforcement Intelligence Network (LEIN) training course, and high-risk event planning among other courses. During my time within the investigations unit, I investigated drug crimes, firearms crimes, burglaries, assaults, and other serious offenses requiring detailed investigation beyond the capabilities of a uniformed officer.

6. I was also previously employed by the Oskaloosa Iowa Police Department from 2004-2007. In Oskaloosa, I served as a patrol officer during that time and investigated general crimes requiring a uniformed police officer. I am a graduate of the Iowa Law Enforcement Academy. At the Academy, in addition to other training, I received training in basic narcotic investigations, firearms law, and drug identification among other areas.

7. I am a graduate of Northwestern College and received a Bachelor of Arts Degree in Political Science. In addition, I have completed coursework towards a Master's Degree in Justice Administration from Upper Iowa University.

8. I am currently a guest professor in the Criminal Justice Program at the University of South Dakota, instructing in the areas of firearm, arson, and explosives investigations.

9. I have instructed courses for the International Outlaw Motorcycle Gang Investigators Association

## Probable Cause

10. In the course my duties with ATF, I have learned the following information from my personal observations and from information provided to me by other law

enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge about this matter.

**Confidential Informant**

11. In late October of 2024, the Algona, Iowa Police Department received information of attempted criminal activity by Lawrence MOORE. Officers learned from a Confidential Informant (CI), that MOORE had recruited the CI to acquire a firearm for him. The CI reported that MOORE asked the CI to purchase a firearm for MOORE to have. When the CI asked why, MOORE wanted the CI to buy the firearm, Moore informed the CI that he was a felon and could not lawfully buy firearms on his own. The CI told MOORE he/she did not feel comfortable purchasing a firearm for MOORE.

12. Your affiant spoke with the CI at a later date and the CI gave the same version of events during that interview with additional detail. The CI stated that MOORE had initially asked the CI to purchase 9mm ammunition and a magazine for a pistol. MOORE told the CI he had a pistol given to him by a family member. MOORE stated that he had given the pistol to another individual as collateral for money. MOORE stated that when he moved to Bode he would have the money to retrieve the firearm and would need ammunition for it. The CI agreed to assist law enforcement and provide MOORE with a phone number of an individual who dealt in firearms. That individual was an undercover (UC) ATF special agent. MOORE was provided the number and later began a text conversation with the UC.

### Target's Criminal History

13. On October 31, 2024, I reviewed MOORE's criminal history. I learned that he had been convicted of multiple felony offenses including: (1) Manufacturing/Delivery of Controlled Substances, in Illinois Circuit Court for Cook County, in case number 02JD06244, on or about 1/6/03; (2) Armed Robbery, in Illinois Circuit Court for Cook County, in case number 05CR1090901, on or about 4/13/06; (3) Aggravated Battery in a Public Place, in Illinois Circuit Court for Cook County, in case number 05CR1090801, on or about 4/13/06; (4) Armed Robbery, in Illinois Circuit Court for Cook County, in case number 2005CR10990, on or about 4/13/06; (5) Aggravated Battery in a Public Place, in Illinois Circuit Court for Cook County, in case number 2005CR109080, on or about 4/13/06; (6) Aggravated Battery in a Public Place, in Illinois District Court for Cook County, in case number 2013C5501830, on or about 9/27/13; and (7) Aggravated Battery on a Peace Officer, in Illinois Circuit Court for Cook County, in case number 2016CR171480, on or about 1/30/16.

### Undercover Contact with Target

14. From November 8, 2024, to and including November 18, 2024, MOORE exchanged text messages with the UC via a recorded line. MOORE asked the UC to purchase 9mm ammunition and a "clip". A clip is a street term for a magazine utilized by a semi-automatic pistol to store and load ammunition into the chamber. MOORE asked the UC for, "9mm 30 shots pro mag for a Smith and Wesson". The UC asked MOORE what kind of Smith and Wesson, and MOORE responded with,

"Model 59" specifically. MOORE also told the UC that; "I buy guns bro send me what you got for sale". MOORE also asked the UC if they smoke weed and told the UC; "I got Os for 150$". Your affiant knows based on his training and experience that an "O" is a street term for an ounce of an illegal drug. MOORE then sent the UC a photo of the marijuana and labeled it "Space runt". Moore then arranged to purchase a firearm from the UC. MOORE also told the UC that; "I will take a 45.40 or a 9 or a chopper". MOORE asked what firearms the UC had for sale. The UC responded that the UC had a Smith older M&P 9 mm pistol for sale. MOORE responded that he would buy it and asked how much. The UC responded $250 and MOORE stated, "Bet". This is street slang for ok. The UC sent MOORE two photos of a Ruger .45 ACP and Taurus 9mm pistol that were for sale. MOORE stated he would purchase the Taurus because the ammunition was with it. MOORE was adamant throughout the conversation that he needed 9mm ammunition. MOORE initially stated that he would pay in cash for the firearm and ammunition. As the conversation progressed, MOORE stated he would not have the money by the agreed upon deal date. MOORE had previously texted about the Smith and Wesson he had, so the UC asked, "U have Smith and Wesson right? Trade? Plus a little extra". MOORE responded with "I will trade" "But this gun is the best". The conversation continued and MOORE agreed to trade his Smith and Wesson pistol and marijuana for the UC Taurus pistol and 9mm ammunition. The UC asked for photo of the Smith and Wesson and MOORE responded with, "Not around it" "At work bro". During the conversation MOORE asked the UC to travel to Bode to

complete the deal.  MOORE became "cool" on the UC during the conversation about location and time for the meeting and an acceptable agreement could not be reached.

**15.**     After conversing with the UC, MOORE send the CI several texts about being suspicious of the UC.  Within that text string, MOORE stated, "He want to trade my gun for his".

**16.**     After a period without communication, MOORE texted the UC and re-engaged in a texting conversation about purchasing a firearm for money.  MOORE wanted to purchase a Taurus pistol, ammunition, and magazines for a pistol from the UC for cash.  The location and time for Monday November 18, 2024, was agreed upon.  As the deal time got closer on November 18, 2024,, MOORE again attempted to change locations and other details for the meeting.  As the conversation continued, the UC asked MOORE if he still needed magazines.  MOORE stated he did not need magazines anymore and sent the UC a photograph.  In the photograph was a Smith and Wesson Model 59 semiautomatic pistol.  This is the same make and model that MOORE previously identified as his pistol to the UC.  The firearm was laying on the top of a bathroom sink with a magazine containing ammunition next to it.  Also visible in the photograph was an individual wearing camouflage crocs and shorts.

### Search Warrant

**17.**     A federal search warrant had already been issued for the residence of MOORE and law enforcement conducted pre-operational surveillance at his

residence while MOORE was texting with the UC. MOORE was observed leaving the residence with his wife, Tatiana Moore. Tatiana was the driver of the vehicle and MOORE was the passenger. Marked law enforcement units conducted a traffic stop of the vehicle for an equipment violation.

18. Your affiant spoke with MOORE in a post Miranda interview. MOORE was extremely angry at everyone present and made statements that did not stand up to logic. Your affiant advised MOORE that he had been speaking with an undercover ATF Special Agent and MOORE responded that he knew that. MOORE stated he was trying to set us up, referring to law enforcement. It is unclear how or for what purpose MOORE would set law enforcement up. Your affiant confronted MOORE with the photograph he had taken and he again gave a nonsensical answer. Your affiant observed that MOORE was wearing camouflage crocs consistent with the photograph. MOORE was also wearing shorts underneath his pants that are consistent in color and logo with the photograph.

19. Your affiant spoke with Tatiana Moore and showed her the photograph of the firearm. Tatiana identified the location as being in the bathroom at their apartment. Tatiana Moore advised she did not have any firearms and did not know if MOORE did.

20. Law enforcement executed the search warrant and located the firearm pictured in the photograph sent by MOORE to the UC. The firearm was located inside the mattress located in the bedroom shared by MOORE and Tatiana Moore.

A void had been cut in the mattress and the fully loaded firearm was concealed inside. Law enforcement also located marijuana in the same bedroom.

**21.** Your affiant spoke with Tatiana Moore again and she advised she had no knowledge of that firearm. Tatiana Moore seemed genuinely upset that she was sleeping on a firearm and that a firearm was present in the home their child shared with them.

**22.** Based on the forgoing information, your affiant believes probable cause exists for the arrest of Lawrence MOORE, for violation of 18 U.S.C. §§ 922(g)(1): possession of a firearm by an individual who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.

**23.** I declare under the penalty of perjury that the above-forgoing facts and circumstances are true and correct to the best of my knowledge and belief.

*Micah Van Otterloo*

_____
Special Agent Micah Van Otterloo
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this __19th__ day of November, 2024.

*Kelly K. E. Mahoney*

_____
Kelly K. E. Mahoney
United States Chief Magistrate Judge
Northern District of Iowa